IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Civil Action No: 4:23-CV-00133-M

DEMARCUS FOX,

Plaintiff,

v.

CITY OF GREENVILLE et al.,

Defendants.

ORDER

This matter comes before the court on Defendants' Motion for Partial Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (the "Motion") [DE 17] and Plaintiff's Motion for Leave to Amend [DE 25]. For the reasons that follow, Plaintiff's Motion is DENIED and Defendant's Motion is GRANTED IN PART.

**I. Background**

a. Plaintiff's Statement of Facts[1]

Plaintiff is a resident of Greenville, North Carolina. DE 1 at 2, 4. Defendants are the City of Greenville (the "City") and five of its police officers (the "Officers"), Officer Keith Knox, Officer Brice Wordsworth, Officer Justin White, Officer Kurt Puerto, and Officer Justin Wooten. *Id.* at 3. On the evening of October 7, 2022, Plaintiff was driving in Greenville and obeying all traffic laws. *Id.* at 5. Officers were following Plaintiff in both marked and unmarked vehicles. *Id.* They did not activate their dashboard cameras, but reported over their radios that Plaintiff was not

---

[1] For purposes of this order, the court will "assume the facts alleged in the complaint are true and draw all reasonable factual inferences in [Plaintiff's] favor." *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002).

committing any traffic infractions. *Id.* Nevertheless, Officers attempted to initiate a traffic stop of Plaintiff, at which point Plaintiff drove to his home and parked in the driveway. *Id.* at 5-6 (allegation that Plaintiff "pulled into the driveway" "[s]hortly after" the Officers "activated their lights").

Officers then approached Plaintiff's vehicle with guns drawn and ordered Plaintiff to exit the vehicle. *Id.* at 6. Plaintiff had his hands up inside his vehicle. *Id.* Officers did not give Plaintiff time to comply with their orders; Officer Knox grabbed Plaintiff by his dreadlocks and ripped him from the vehicle with such force that several dreadlocks were torn from Plaintiff's scalp. *Id.* at 6-7. Officer Knox, Officer White, and other Officers then slammed Plaintiff to the ground, and punched and kicked him. *Id.* at 7. One Officer placed a knee on Plaintiff's neck. *Id.* Officer Puerto joined in the beating. *Id.* Officers Wordsworth and Wooten failed to activate their body-worn cameras. *Id.* at 8. Officer Wooten assisted in the arrest and failed to intervene during the beating. *Id.* Plaintiff never resisted. *Id.* at 7.

Plaintiff was arrested and charged with Fleeing/Eluding Arrest and Resisting a Public Officer. *Id.* at 10. Officers told him the charges would go away if he worked for them as a confidential informant. *Id.* at 11. Plaintiff declined the Officers' overture. *Id.* The charges were still dismissed. *Id.*

The City has a de facto policy that approves the deactivation or covering of dashboard and body-worn cameras during traffic stops and arrest. *Id.* at 9, 14. The City also has "an established practice" whereby its officers initiate contact with members of the public and then attempt to provoke a response by subjecting those individuals to excessive force. *Id.* at 14-15. The City also failed to discipline the Officers for their role in Plaintiff's arrest, establishing a de facto policy that approves of excessive force and unlawful arrests. *Id.* at 12-13.

Plaintiff brings several claims for relief:

1) A Fourth Amendment unlawful stop claim against all Defendants;

2) A Fourth Amendment excessive force claim against all Defendants;

3) A Fourth Amendment unlawful arrest claim against all Defendants;

4) A Fourth Amendment malicious prosecution claim against all Defendants;

5) A common law battery claim against the Officers;

6) A common law claim for intentional infliction of emotional distress ("IIED") against all Defendants;

7) A "claim" for punitive damages against the Officers; and

8) A "claim" for injunctive relief against all Defendants.

*Id.* at 15-21. Plaintiff seeks damages, injunctive relief, attorney's fees, and other relief. *Id.* at 22.

b. Procedural History

Plaintiff initiated this action on August 8, 2023. DE 1. Defendants answered the Complaint on October 17, 2023. DE 15. Defendants then moved for partial judgment on the pleadings on November 28, 2023. DE 17; *see also* DE 18 (Memorandum in Support). Defendants seek dismissal of (1) all claims against the City, (2) Plaintiff's IIED claim, and (3) Plaintiff's battery claim against Officer Wooten. DE 17 at 2.

Plaintiff did not respond to Defendants' Motion. *See* Docket Entries dated Nov. 28, 2023, to present. A Scheduling Order was entered in this case on December 4, 2023. DE 20. That Order provides that "[m]otions to amend the pleadings . . . shall be made by Plaintiff no later than April 2, 2024," and that the Order did not "relieve a party of any requirement to obtain court approval prior to . . . amending its pleadings." *Id.* at 1.

3

On April 2, 2024, Plaintiff filed a motion requesting leave of court to file an amended complaint. DE 23 at 1. After receipt of a deficiency notice from the Clerk of Court, Plaintiff re-filed the motion for leave on April 6. DE 24. After receipt of a second deficiency notice, Plaintiff re-filed the motion for leave on April 12. DE 25; *see also* DE 26 (Supporting Memorandum). Defendants oppose the motion for leave. DE 31. Defendants' Motion and Plaintiff's Motion are now fully briefed and ready for decision.

## II. Legal Standards

### a. Pleading Standards

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule does not require "detailed factual allegations," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), but the allegations must cross the threshold "between possibility and plausibility of entitlement to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal brackets and quotation marks omitted). Put another way, although the *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, [the Rule] does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

"After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).[2] "A motion for judgment o[n] the pleadings pursuant to Rule 12(c) is analyzed under the same standard as a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss." *Mendenhall v. Hanesbrands, Inc.*, 856 F. Supp. 2d 717, 723

---

[2] "Failure to state a claim upon which relief can be granted, . . . or . . . a legal defense to a claim may be raised . . . by a motion under Rule 12(c)." Fed. R. Civ. P. 12(h)(2)(B); *Shelton v. Safeway, Inc.*, No. 10-CV-2358, 2011 WL 1869827, at *3 (D. Md. May 16, 2011) (explaining that "a failure to submit a 12(b)(6) defense before pleading is not fatal because a defendant retains the right to raise [that] defense . . . after the pleadings are closed by filing a motion for judgment on the pleadings").

4

(M.D.N.C. 2012). That standard requires the court to accept as true all of the well-pleaded factual allegations contained within the Complaint and draw all reasonable inferences in the plaintiff's favor. *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017).

In that regard, a motion for judgment on the pleadings, just like "[a] motion to dismiss under Rule 12(b)(6)[,] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992); *accord Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "In the limited circumstances where the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint." *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). As a result, motions to dismiss "generally cannot reach the merits of an affirmative defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

Further, when faced with a Rule 12(b)(6) motion to dismiss, the court typically limits its review to "the allegations of the complaint itself." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). Beyond those allegations, the court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

However, "[u]nlike on a Rule 12(b)(6) motion, . . . on a Rule 12(c) motion the court may consider the Answer as well." *Alexander v. City of Greensboro*, No. 1:09-CV-293, 2011 WL 3360644, at *2 (M.D.N.C. Aug. 3, 2011). The court therefore accepts as true the allegations in the answer "to the extent they have not been denied or do not conflict with the complaint." *Farmer v. Wilson Hous. Auth.*, 393 F. Supp. 2d 384, 386 (E.D.N.C. 2004) (internal quotation mark omitted).

5

Further, the court "may consider documents incorporated by reference in the [answer]." *Parks v. Alteon, Inc.*, 161 F. Supp. 2d 645, 649 n.1 (M.D.N.C. 2001). The court may also consider exhibits attached to a defendant's Rule 12(c) motion. *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014).

Although the court is authorized to consider some extrinsic evidence when considering a motion for judgment on the pleadings, that evidence must be "central to one of the claims [in the complaint] and [its] authenticity [must be] undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002). If the court fails to exclude a document that does not fit that rubric, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). On the other hand, "[w]here plaintiff has actual notice of all the information in the [defendant's] papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12[(c)] motion into one under Rule 56 is largely dissipated." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

    b. <u>Amendments to Pleadings</u>

"Generally, motions to amend a pleading are governed by Federal Rule of Civil Procedure 15(a)." *360 Mortg. Grp., LLC v. Stonegate Mortg. Corp.*, No. 5:14-CV-00310, 2016 WL 9805217, at *1 (E.D.N.C. June 30, 2016). If a party can no longer amend its pleading as a matter of course, it "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.*

However, entry of a scheduling order in a case makes Federal Rule of Civil Procedure 16(b)(4) conditionally relevant to the amendment analysis. If a party fails to amend its pleading within the time prescribed by the scheduling order, "a party must first demonstrate 'good cause' to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment." *Cook v. Howard*, 484 F. App'x 805, 814–15 (4th Cir. 2012) (quoting Fed. R Civ. P.

6

16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.")); *see also Montgomery v. Anne Arundel Cnty., Maryland*, 182 F. App'x 156, 162 (4th Cir. 2006) (holding that where plaintiff "filed her motion to amend the complaint after the deadline set by the scheduling order for amending pleadings, Federal Rule of Civil Procedure 16(b) applies"); Wright & Miller, 6A FED. PRAC. & PROC. CIV. § 1522.2 (3d ed.) (explaining that, "to the extent [] other federal rules, such as Rule 15 governing pleading amendments, contain a more lenient standard than good cause, the Rule 16(b) standard controls any decisions to alter a scheduling order for purposes of making pleading amendments and it must be satisfied before determining whether an amendment should be permitted under Rule 15").

"In deciding whether good cause exists under Rule 16(b), the court focuses on the movant's diligence." *360 Mortg. Grp.*, 2016 WL 9805217, at *2. In other words, the movant must "show that the deadline[] cannot reasonably be met despite [its] diligence." *Cook*, 484 F. App'x at 815. Demonstrating good cause requires some explanation as to the "reasons for [a party's] tardy submission." *Montgomery*, 182 F. App'x at 162.

### III. Analysis

a. <u>Plaintiff's Motion to Amend</u>

Plaintiff seeks leave of court to file an amended complaint that includes additional details about the emotional distress he suffered as a result of his encounter with the Officers. DE 25 at 2. These details are important to support his IIED claim; without them, Defendants contend that the Complaint fails to state a claim for IIED. DE 18 at 23-24. But Plaintiff did not properly move to amend his Complaint until after the deadline in the Scheduling Order, and his untimely Motion does not attempt to establish good cause.

7

Plaintiff first asserts that he filed the "motion to amend the Complaint on April 2, 2024, prior to the expiration of the deadline," and so therefore "Plaintiff submits that Plaintiff's motion to Amend the Complaint did not amount to undue delay." DE 26 at 6. But Plaintiff's initial motion requesting leave did not comply with this court's local rules, in that it was not "filed with an accompanying supporting memorandum." Local Civil Rule 7.1(e).[3] Motions that fail to comply with the Local Rules are subject to summary denial, so the court disagrees that Plaintiff timely filed his motion for leave. *See, e.g.*, *Dykstra v. Temple*, No. 4:18-CV-145, 2019 WL 96217, at *2 (E.D.N.C. Jan. 3, 2019) (summarily denying motion that failed to comply with local rule); *Mills v. Thomas*, No. 5:12-CT-3007, 2013 WL 1163794, at *3 (E.D.N.C. Mar. 20, 2013) (same); *Dozier v. Champion*, No. 5:06-CT-3041, 2007 WL 9760428, at *1 (E.D.N.C. Aug. 2, 2007) (same).

Plaintiff further argues that Defendants would not be prejudiced by the amendment, and that the amendment is not sought in bad faith. DE 26 at 7-9. But neither of these arguments materially bear on the court's good cause inquiry under Rule 16(b)(4), which trains on "the movant's diligence" in seeking to meet a deadline. *360 Mortg. Grp.*, 2016 WL 9805217, at *2. A party needs to satisfy Rule 16(b)(4) before the court considers Rule 15(a)(2). *Cook*, 484 F. App'x at 814–15; *Montgomery*, 182 F. App'x at 162.

As Defendants point out in opposition to Plaintiff's Motion, they identified pleading deficiencies in Plaintiff's IIED claim when they filed their Motion for partial judgment on the pleadings on November 28, 2023. DE 31 at 2-3. At that point, Plaintiff "was on notice" of a potential deficiency in his Complaint. *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 632 (D. Md. 2003) (denying motion to amend filed one week after deadline in scheduling order). Plaintiff then waited over four months before filing the initial motion for leave which, as

---

[3] The initial motion also did not comply with this court's practice preferences because it did not contain any statement reflecting prior consultation with opposing counsel and the views of the opposing party on the motion.

the court has explained, did not comply with the Local Rules. DE 23. Plaintiff did not file a compliant motion until April 12, ten days after the deadline in the Scheduling Order. DE 25; *see also* DE 20 at 1. In addition, the information Plaintiff seeks to add to his Complaint was known to him at the time he instituted this action. DE 31 at 6; *see also* DE 25 at 2.

Taken together, the court does not find good cause to be met where a party waits several months to move to amend a complaint with information that the party has possessed since commencement of a lawsuit, and then does not properly do so until after the deadline prescribed by a scheduling order has passed. *See Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002) (explaining that a "[l]ack of diligence and carelessness are hallmarks of failure to meet the good cause standard") (internal quotation mark omitted). Because Plaintiff has not demonstrated good cause, the court does not reach the Rule 15(a)(2) analysis. *See Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W. Va. 1995) (emphasizing that, for Rule 16(b)(4) analysis, if the "party was not diligent, the inquiry should end"). Plaintiff's Motion for leave is denied.[4]

---

[4] To the extent relevant, the court also disagrees with the contention that permitting Plaintiff's amendment would not prejudice Defendants. The filing of an amended complaint would render moot Defendants' Motion. *See Henderson v. Wells Fargo Bank*, No. 3:09-CV-01, 2009 WL 1259355, at *4 n.4 (W.D.N.C. May 5, 2009) (advising plaintiff "that if his Motion to Amend were allowed, the Motion for Judgment on the pleadings would have been moot, and defendant would then be required to file either an answer or other response to the Amended Complaint, which could include a new Motion for Judgment on the Pleadings based on the allegations in that amended pleading."); *see also Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001) ("an amended pleading supersedes the original pleading, rendering the original pleading of no effect"). Because Defendants would have to refile an Answer and their Motion, Plaintiff could then take advantage of a new briefing schedule and file a response in opposition, which he previously failed to do. Granting Plaintiff's Motion would, in effect then, both authorize Plaintiff to file an amended pleading and give him a second chance to oppose a partially dispositive motion. Under the circumstances, that would prejudice Defendants.

At bottom, the court can discern no prejudice to either party that would result from denying Plaintiff's motion. Plaintiff's IIED claim is based on identical facts as his excessive force claim. *See* DE 1 at 14, 19-20. "[C]ompensatory damages for emotional distress are compensable under § 1983." *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1250 (4th Cir. 1996). And a party may not recover twice for the same injury. *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 460 (4th Cir. 2011) (explaining that the Fourth Circuit recognizes "the widely accepted prohibition on duplicative damages"). Therefore, if Plaintiff ultimately prevails on his excessive force claim, he may recover damages for his emotional distress, rendering his IIED claim duplicative and unnecessary.

9

b. Defendant's Motion

   i. *Section 1983 Claims against the City*

Defendants contend that the Complaint fails to state a Section 1983 claim against the City because his allegations as to certain de facto policies of the City are conclusory and based only "upon information and belief." DE 18 at 4-5. Defendants further assert that municipal liability under Section 1983 cannot be based on one instance of a failure to punish. *Id.* at 12-14. Defendants finally argue that Plaintiff's state law claims are barred by governmental immunity. *Id.* at 19-22. As noted, Plaintiff did not respond in opposition to Defendants.

Municipalities such as the City are "to be included among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). But "municipal liability" cannot "be premised on the mere fact that the municipality employed the offending official." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 810 (1985). Rather, a municipality's liability under Section 1983 must be derived from an "action [taken] pursuant to official municipal policy" that "caused a constitutional tort." *Monell*, 436 U.S. at 691; *see also id.* ("a municipality cannot be held liable under § 1983 on a *respondeat superior* theory") (italics in original).

"A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal brackets and quotation marks omitted). Plaintiff's claims against the City proceed under theory (2), in that he alleges the City's

10

Chief of Police decided to turn a "blind eye" to the unlawful arrest and excessive force that Plaintiff suffered by failing to discipline the Officers, DE 1 at 12-13, and theory (4), in that Plaintiff alleges the City has unofficial policies sanctioning the obstruction of cameras and use of excessive force during traffic stops and arrests, *id.* at 9, 14-15. Neither theory states a plausible claim for relief.

First, as to the theory that the City established de facto policy by failing to discipline the Officers, "the mere fact that a supervisor failed to discipline a subordinate . . . does not a municipal policy make." *Monfils v. Taylor*, 165 F.3d 511, 517 (7th Cir. 1998). Courts have tried but failed to identify "a single case in which municipal inaction against an officer's alleged unconstitutional conduct constitutes a policy or custom under the law." *Jones v. Town of Ashland, Virginia*, No. 3:07-CV-462, 2007 WL 9808158, at *5 (E.D. Va. Nov. 15, 2007). In short, "a municipal policy of authorizing or encouraging police misconduct . . . cannot be inferred from a municipality's isolated decision not to discipline a single officer for a single incident of illegality." *Berry v. McLemore*, 670 F.2d 30, 33 (5th Cir. 1982); *accord Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989) (declining to "hold that the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under *Monell*").

In certain circumstances, such as "when a final policymaker has the authority to review the decision of a subordinate, its ***approval*** of that allegedly unconstitutional decision can [] give rise to liability under Section 1983." *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 534 (4th Cir. 2022) (emphasis added). But this ratification theory of municipal liability requires that the final policymaker have an opportunity to either halt or unwind a prior unconstitutional act by a subordinate. *E.g., Hall v. Marion Sch. Dist. No. 2*, 31 F.3d 183, 196 (4th Cir. 1994) (school district could face *Monell* liability for school board's dismissal of teacher because board supported school superintendent's efforts to retaliate against teacher after she wrote

11

letter that was critical of board's handling of funds); *Starbuck*, 28 F.4th at 535 (school board could be liable where it upheld student's suspension based on comments he made about school shooting). Without the opportunity to reverse a prior unconstitutional act, subsequent municipal inaction cannot fairly be described as "the moving force behind the injury of which the plaintiff complains." *Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997).[5] As such, declining to discipline a subordinate is not tantamount to ratifying the underlying conduct of that subordinate.

Failing to punish a completed (alleged) constitutional violation does not give rise to municipal liability under a ratification theory for the related reason that "post-facto approval . . . cannot possibly have caused the constitutional violation." *Franklin v. City of Charlotte*, 64 F.4th 519, 537 (4th Cir. 2023). Claims for municipal liability entail "rigorous requirements of culpability and causation," *Brown*, 520 U.S. at 415, because "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory," *Monell*, 436 U.S. at 691 (1978) (italics in original). *See also Tuttle*, 471 U.S. at 823–24 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.") The City, by deciding not to discipline the Officers, did not ratify their conduct because the City had no opportunity to halt or reverse their alleged use of excessive force. *See Starbuck*, 28 F.4th at 535; *Franklin*, 64 F.4th at 537. Because the City did not ratify the Officers' actions, it was not the moving force behind the alleged constitutional violation, and did

---

[5] In other circumstances, "a city's complete failure to maintain an adequate system of disciplining officers who act unconstitutionally might also 'fairly be said to represent a policy for which the city is responsible.'" *Cox v. D.C.*, 821 F. Supp. 1, 12 (D.D.C. 1993) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 852 (3d Cir. 1990)), *aff'd*, 40 F.3d 475 (D.C. Cir. 1994); *see also Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989); *Harris v. City of Pagedale*, 821 F.2d 499, 504 (8th Cir. 1987). But "a policy of failing to take action," *id.*, cannot be demonstrated by one example, such as that alleged here, *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 390–91 (1989).

12

not cause it. *See Brown*, 520 U.S. at 405; *Monell*, 436 U.S. at 691. The City therefore cannot face municipal liability for its failure to punish the Officers.

Plaintiff's other theory, that the City has unofficial policies sanctioning the obstruction of cameras and use of excessive force during traffic stops and arrests, fares no better because it is solely based on conclusory allegations. *See* DE 1 at 9, 14-15. "[C]onclusory allegations 'upon information and belief' are insufficient to establish a *Monell* claim because Plaintiff does not explain which facts, other than [his own experience], support [his] belief that his alleged deprivation of rights is part of the [City's] existing 'customs, patterns, or practices.'" *Fleming v. City of New York*, No. 18-CV-4866, 2019 WL 4392522, at *8 (S.D.N.Y. Aug. 27, 2019) (quoting *D'Alessandro v. City of New York*, 713 F. App'x 1, 10 (2d Cir. 2017)). "Plaintiff must do more than allege in a conclusory fashion that the [City] maintains an unwritten policy or custom of permitting the types of wrongs Plaintiff experienced." *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 936 (S.D. Cal. 2022) (collecting cases).

The Complaint alleges "[u]pon information and belief" (1) that the Officers' failure to activate body-worn cameras "was in line with a de facto policy and practice of the City," and (2) that the City also "has an established practice having it[s] law enforcement officers stop suspects without reasonable articulable suspicion and then having their law enforcement officers apply excessive force." DE 1 at 9, 14-15. But "merely plop[ping] 'upon information and belief' in front of a conclusory allegation" does not "render it non-conclusory." *Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Cap. LLC*, 615 F. Supp. 3d 379, 385 (M.D.N.C. 2022) (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018)). Put another way, deploying "upon information and belief" in front of an element of a cause of action is "an inadequate substitute for providing detail as to why" a particular "element is present in an action." *Malibu Media, LLC v.*

13

*Doe*, No. 13-CV-365, 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014). Or, to paraphrase *Twombly* and *Iqbal*, Plaintiff's "bare assertion" that the City has certain de facto policies authorizing unconstitutional conduct by its law enforcement officers "amount[s] to nothing more than a 'formulaic recitation of the elements'" of a *Monell* claim. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555).

Plaintiff has not alleged any factual matter, apart from the circumstances of his own encounter with the Officers, that would suggest the existence of unofficial City policy related to use of cameras or force during traffic stops and arrests. *See generally* DE 1. The Complaint's analytical leap to allege the existence of policy based on an isolated example of alleged misconduct is the sort of "unreasonable conclusion[]" that the court need not accept as true. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Because Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," *Iqbal*, 556 U.S. at 678–79, the court finds that Plaintiff has failed to state a *Monell* claim against the City. Defendant's Motion will be granted as to Plaintiff's Section 1983 claims against the City.

### ii. *State Law Claims against the City*

Defendants also contend that Plaintiff's state law claims against the City are subject to dismissal because "the City has not waived its governmental immunity," which acts as "a complete bar" to those claims. DE 18 at 19. The court agrees: governmental immunity, an affirmative defense, "is a complete immunity from being sued in court." *Ballard v. Shelley*, 257 N.C. App. 561, 564, 811 S.E.2d 603, 605 (2018) (internal quotation mark omitted). This immunity extends to municipalities in their "provision of police services." *Evans v. Chalmers*, 703 F.3d 636, 655 (4th Cir. 2012). Although motions for judgment on the pleadings "generally cannot reach the merits of an affirmative defense," *Goodman*, 494 F.3d at 464, here the "allegations . . . giv[ing]

14

rise to [the] affirmative defense . . . clearly appear[] on the face of the complaint," *Richmond, Fredericksburg & Potomac*, 4 F.3d at 250.

A city may waive governmental immunity by purchasing liability insurance. N.C.G.S. § 160A-485(a). The Complaint alleges "[u]pon information and belief" that the City "has waived its governmental immunity through the purchase of liability insurance." DE 1 at 3. However, "[t]he City has presented uncontroverted evidence that it does not have liability insurance for the conduct alleged here." *Doriety v. Sletten*, No. 1:23-CV-211, 2023 WL 4872570, at *1 (M.D.N.C. July 28, 2023); *see also* DE 17-3 at 14 (City's insurance policy, which "applies to the tort liability of any insured only to the extent that such tort liability is not subject to any defense of governmental immunity under North Carolina law"); DE 17-2 at 1 (affidavit that City did not have any other "liability insurance policies or agreements with any local government risk pool" at the time of the events giving rise to this action).

Because governmental immunity implicates the court's jurisdiction, the court does not accept as true the Complaint's allegations where there are directly contradicted by evidence. *See D.P. Riggins & Assocs., Inc. v. Am. Bd. Companies, Inc.*, 796 F. Supp. 205, 208 (W.D.N.C. 1992); *see also Evans*, 703 F.3d at 655 (reminding that "courts may not lightly infer a waiver of immunity"); *Doriety*, 2023 WL 4872570, at *1 ("When the defendant submits evidence . . . directed to jurisdiction along with the motion to dismiss, the complaint's allegations can no longer be taken as true or controlling") (internal quotation mark omitted). Plaintiff offered no response to Defendants' evidence, which establishes that the City has not waived its governmental immunity through the purchase of liability insurance. Government immunity therefore applies, and bars Plaintiff's state law claims against the City. *See Ballard*, 257 N.C. App. at 564, 811 S.E.2d at 605. Defendants' Motion will be granted as to those claims.

15

### iii. IIED Claim

As perhaps forecast by the court's treatment of Plaintiff's Motion, the court further finds that the Complaint "fail[s] to plausibly allege that Defendants' alleged actions caused [Plaintiff] severe emotional distress." DE 18 at 23. Under North Carolina law, the tort of "[i]ntentional infliction of emotional distress requires outrageous conduct that is intended to cause and does cause severe emotional distress." *Clark v. Clark*, 280 N.C. App. 403, 415, 867 S.E.2d 704, 715 (2021). Severe emotional distress "means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). A complaint's "[a]llegations that fail to identify a severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so are not sufficient." *Moschos v. Moschos*, 287 N.C. App. 162, 166, 882 S.E.2d 401, 404 (2022).

Here, the Complaint merely alleges that "Plaintiff has suffered severe emotional distress." DE 1 at 14, 20. "These allegations fail to identify a severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so, and fail to allege sufficient facts concerning the type, manner, or degree of severe emotional distress Plaintiff claims to have experienced." *Moschos*, 287 N.C. App. at 167, 882 S.E.2d at 404. "[S]uch failure is fatal to [Plaintiff's] claim for intentional infliction of emotional distress." *Redman v. Am. Airlines, Inc.*, No. 3:22-CV-00515, 2023 WL 4768696, at *6 (W.D.N.C. July 26, 2023); *see also McFadyen v. Duke Univ.*, 786 F. Supp. 2d 887, 980 (M.D.N.C. 2011) (dismissing IIED claim where complaint did "not include any specific identification of any particular Plaintiff's mental or

emotional condition or the nature of his emotional distress"). Defendants' Motion is granted as to Plaintiff's IIED claim.

### iv. *Battery Claim against Officer Wooten*

Lastly, Defendants argue that Plaintiff "fails to state a plausible claim for battery against [Officer] Wooten, because he does not allege an offensive touching committed by Wooten." DE 18 at 24. Accepting as true the factual allegations contained within the Complaint and drawing all reasonable inferences in Plaintiff's favor, the court cannot agree. *Hall*, 846 F.3d at 765.

True, a battery requires some "harmful or offensive contact." *Hawkins v. Hawkins*, 101 N.C. App. 529, 533, 400 S.E.2d 472, 475 (1991), *aff'd*, 331 N.C. 743, 417 S.E.2d 447 (1992). But the Complaint specifies that its use of the term "Defendant Officers" means all Officers, "individually and collectively." DE 1 at 3. And the Complaint further alleges that "Defendant Officers [applied] excessive force against Plaintiff by pushing and pulling him in multiple directions, slamming him to the ground, placing a knee on Plaintiff's neck, repeatedly punching and kneeing Plaintiff, continuously pulling Plaintiff by his hair, and needlessly grinding Plaintiff's face into the ground," and that "Defendant Officers . . . violently punched, kicked and kneed Plaintiff." *Id.* at 7. The Complaint adds that "Defendant Wooten[] assisted with the arrest [and] did nothing to intervene." *Id.* at 8. At this stage of the proceedings, those allegations are sufficient to state a battery claim against Officer Wooten. Defendants' Motion is therefore denied as to this claim.

## IV. Conclusion

Plaintiff's Motion for leave to amend is DENIED. Defendant's Motion for partial judgment on the pleadings is GRANTED IN PART and DENIED IN PART. The City is DISMISSED as a Defendant, and Plaintiff's IIED claim is DISMISSED.

Plaintiff's Section 1983 claims and state law battery claim will proceed against the Officer Defendants.

SO ORDERED this 20th day of June, 2024.

*Richard E Myers II*

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE